No. 01-863

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 285

STATE OF MONTANA,

Plaintiff and Respondent,

v.

FLOYD ST. MARKS,

Defendant and Appellant.

APPEAL FROM:     District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel A. Boucher, Altman & Boucher, Havre, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant Montana
Attorney General, Helena, Montana; David G. Rice, Hill County Attorney,
Cyndee L. Faus, Deputy Hill County Attorney, Havre, Montana

Submitted on Briefs:  July 6, 2002

Decided:  December 10, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Floyd St. Marks (St. Marks) was charged in the Twelfth Judicial District Court with the offense of criminal possession of dangerous drugs based on contraband found during execution of a search warrant on St. Marks' vehicle and motel room.  St. Marks filed a motion to suppress all evidence gathered as a result of the search warrant, arguing that the search warrant application lacked sufficient probable cause.  The State conceded that some information contained in the search warrant application was stale and agreed the District Court should not consider that information in determining the sufficiency of probable cause, but argued that the remaining information was sufficient to support the application.  The District Court denied the motion to suppress, concluding there was sufficient probable cause for the issuance of the search warrant.  St. Marks plead guilty to the charge, reserving the right to appeal from the order denying his motion.  We affirm.

¶2      While St. Marks challenges only the sufficiency of the probable cause contained in the search warrant application, the State asserts that it was appropriate for the District Court to give deference to the issuing magistrate, since the material excised from the search warrant application was merely stale and not illegally obtained.  We deem it appropriate to address this matter as a separate issue.  Therefore, we restate the issues as:

> 1.  Whether the District Court erred in giving deference to the issuing magistrate's determination of probable cause, in light of the State's concession that some information from the search warrant application was stale and should not have been considered; and

2. Whether the District Court erred when it concluded there was sufficient probable cause to support issuance of the search warrant.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On December 1, 2000, the Hill County Justice of the Peace issued a search warrant for St. Marks' vehicle and motel room. The search warrant was issued upon review of an application and supporting affidavit prepared by Deputy Shawn Van Vleet (Van Vleet) of the local Tri-Agency Task Force. The first portion of Van Vleet's affidavit set out his training and experience, while the second part described information specific to St. Marks and his alleged drug trafficking activities and behavior. Among other material in the affidavit were descriptions of three interviews with informants that took place between January and July of 2000. During proceedings on the motion to suppress, the State stipulated to the District Court that these interviews were "stale," and should not have been considered in the issuance of the search warrant. The District Court did not refer to the interviews in its order denying St. Marks' motion to suppress.

¶4 The search warrant application also described three anonymous phone calls, one received by the Hill County Sheriff's Office in October, 2000, and two received by the Havre Police Department in November, 2000. Two of the callers specified that St. Marks dealt drugs from the Corner Bar in Havre, and one caller stated St. Marks' nickname was "Skidzy." Along with various other details, all three callers alleged that St. Marks was selling dangerous drugs in the area. However, the District Court noted the absence of information concerning the reliability of these tips, and while it found they may have created some

3

suspicion and were not completely useless, the court concluded they did not establish probable cause.

¶5    The remaining relevant information from the search warrant application and Van Vleet's affidavit is summarized as follows:

1.  On November 29, 2000, an informant called the Havre Police Department, stating an interest in talking to a task force agent.  Van Vleet and Sergeant Jerry Nystrom met with the informant, identified only as CI-00-025 (CI), who stated that St. Marks, also known as "Skidzy," had been killing people with all the cocaine he had been selling.  CI stated that she had been "good friends" with St. Marks, but was tired of the drug dealing.[1]  The informant explained that St. Marks hides the cocaine in a vent on the driver's side of his blue Eagle Talon that has the vanity plate, "SKIDZY."  According to the informant, St. Marks was currently staying at the Townhouse Inn in room 109, and dealt drugs from the Townhouse Inn.  She told the officers that St. Marks and Pete Torres received a cocaine shipment about two weeks prior, and described the quantity to be around one kilo (2.2 lbs).  CI also reported to Van Vleet that St. Marks and Torres were expecting another shipment of cocaine and that they would not travel to get it.  She also explained that St. Marks would have the cocaine on his person, in his car, and in room 109.

2.  On November 30, 2000, a federal search warrant was executed on Pete Torres' residence at Rocky Boy, Montana, where agents seized documents and empty envelopes with currency notations on them.  Pursuant to an arrest warrant, Torres was arrested while driving a Rocky Boy school bus.  Eleven baggies of cocaine were removed from his person, and an agent also seized $1084.00 and a baggie of marijuana from Torres and the bus.

3. On November 30, 2000, St. Marks' vehicle was observed parked across the street from the Corner Bar at approximately 7:30 p.m.  At about 8:30 p.m., St. Marks' car was observed in the Townhouse Inn parking lot.  St. Marks' vehicle was also observed at the Townhouse Inn on November 29, 2000.

---

[1]Although the application for the search warrant does not indicate CI's gender, Nystrom testified that CI was female.  When asked during the interview what her relationship to St. Marks was, CI replied she was his girlfriend.  However, Van Vleet used the term, "good friend" in his search warrant application affidavit.

4. On November 30, 2000, at 11:45 p.m., two law enforcement officers spoke to the desk clerk at the Townhouse Inn. The clerk stated that St. Marks had been staying in room 109 for the last two months and that he had been paying in cash every two weeks. The officers learned from the Inn's register that St. Marks listed his address as 1424 2nd Street, Havre, Montana.

5. Van Vleet believed, based on his training and experience, that people who distribute drugs will often hide the drugs on their person, vehicle, and residence. Van Vleet also stated it was unusual for people to stay in a motel for long periods of time when they have a local address, but added that it is common for people distributing dangerous drug to stay at places other than their own residences to avoid drawing attention to themselves or placing their residence at risk.

¶6 The warrant application also explained that a canine, trained to detect the odor of illegal drugs, performed a sniff on St. Marks' vehicle on November 30, 2000. While the dog was reportedly "somewhat interested" in the driver's door handle and trunk lid, it "did not give full indication." The District Court did not rely on this information in its order denying the motion to suppress.

¶7 Law enforcement officers executed the search warrant on December 1, 2000, and searched St. Marks' vehicle and motel room. From St. Marks' motel room, officers seized prescription drugs not prescribed to St. Marks, including Xanax tablets wrapped in cellophane wrappers. Officers also found and seized two small baggies of cocaine weighing approximately 2.3 grams from under the driver's seat in St. Marks' vehicle. Based on the seized contraband, St. Marks was charged by Information on March 19, 2001, with one count of criminal possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA.

¶8 On April 30, 2001, St. Marks filed a motion to suppress, alleging that the search warrant was not supported by sufficient probable cause. The District Court conducted a

5

hearing on the motion on June 11, 2001. At the hearing, the court heard testimony from Sergeant Jerry Nystrom (Nystrom) of the Havre Police Department, as Deputy Van Vleet had died. Nystrom had been involved with the investigation of St. Marks, participated in the search, and was present for the interview with CI.

¶9     The District Court entered its order denying the motion on June 25, 2001. In its order, the District Court did not reference the three interviews that were stipulated as stale and concluded that "[c]onsidering the totality of the circumstances, [and] giving deference to the decision of the issuing magistrate," there was sufficient probable cause to support the issuance of the search warrant.

¶10     On July 24, 2001, St. Marks plead guilty to the charge and reserved the right to appeal the court's order denying his motion. On September 7, 2001, the District Court sentenced St. Marks to a three year deferred imposition of sentence under the supervision of the Department of Corrections. St. Marks appeals from the District Court's order denying his motion to suppress.

## STANDARD OF REVIEW

¶11     In reviewing a district court's denial of a motion to suppress evidence, we determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law is correct. *State v. Gray*, 2001 MT 250, ¶ 10, 307 Mont. 124, ¶ 10, 38 P.3d 775, ¶ 10 (citing *State v. Reesman*, 2000 MT 243, ¶ 18, 301 Mont. 408, ¶ 18, 10 P.3d 83, ¶ 18). When determining whether the district court correctly

interpreted and applied the law, this Court's review is plenary. *State v. Griggs*, 2001 MT 211, ¶ 17, 306 Mont. 366, ¶ 17, 34 P.3d 101, ¶ 17 (citation omitted).

**¶12** When the evidence that is the subject of a motion to suppress was gathered pursuant to a search warrant, this Court's function as a reviewing court is to ensure that the court issuing the search warrant had a substantial basis to determine probable cause existed. *State v. Grams*, 2002 MT 188, ¶ 10, 311 Mont. 102, ¶ 10, 53 P.3d 897, ¶ 10 (citing *Reesman*, ¶ 19).

## DISCUSSION

### Issue 1

**¶13 Did the District Court err in giving deference to the issuing magistrate's determination of probable cause, in light of the State's concession that some information from the search warrant application was stale and should not have been considered?**

**¶14** We typically commence our review on the presumption that great deference must be paid to a magistrate's determination that probable cause existed for issuing a search warrant, and every reasonable inference possible should be drawn to support that determination. *See Reesman*, ¶ 19 (citing *State v. Rinehart* (1993), 262 Mont. 204, 211, 864 P.2d 1219, 1223). However, when information has been excised from an application for a search warrant after the fact, we have concluded that such deference should not be paid to the magistrate's determination of probable cause and that the reviewing court should review the excised application *de novo* to determine whether probable cause supported the issuance of the search warrant. *See*, *State v. Kuneff*, 1998 MT 287, ¶ 19, 291 Mont. 474, ¶ 19, 970 P.2d 556, ¶ 19.

7

¶15    The State first asserts that because the hearing on St. Marks' motion to dismiss revealed no illegality in the seizure of evidence, it was appropriate for the District Court to defer to the issuing magistrate's determination.  We disagree.

¶16    In *Kuneff* we noted that while generally a magistrate's determination of probable cause is given deference, the reviewing court is ultimately required to "ensure that a magistrate had a substantial basis for concluding that probable cause" existed.  *Kuneff*, ¶ 18 (citing *State v. Oleson*, 1998 MT 130, ¶ 7, 289 Mont. 139, ¶ 7, 959 P.2d 503, ¶ 7).  We concluded that "[a]s a matter of logic and common sense, a reviewing court cannot defer to a magistrate's consideration of an application for search warrant that the magistrate in effect did not review."  *Kuneff*, ¶ 19.  *See also*, *State v. Worrall*, 1999 MT 55, ¶¶ 57-59, 293 Mont. 439, ¶¶ 57-59, 976 P.2d 968, ¶¶ 57- 59 (remanded for determination of whether false statements were included in search warrant application, and after applying rationale from *Kuneff*, instructed the district court to excise any false statements and review application *de novo* for sufficiency of probable cause).

¶17    We conclude the rationale from *Kuneff* applies to any situation where information is excised or redacted from a search warrant application after the fact, regardless of the reason why the redaction occurred.  Accordingly, we conclude the District Court erred when it gave deference to the issuing magistrate's decision, because the District Court did not in effect consider the same search warrant application as the magistrate did when determining sufficiency of probable cause.  However, this conclusion is not dispositive of the matter before us, since this Court's function as a reviewing court is to ensure that a court issuing a

8

search warrant had a substantial basis to determine probable cause existed--that is, whether the search warrant application contained sufficient probable cause to support the issuance of a search warrant. *See*, *Reesman*, ¶ 19.

¶18　We recognize that throughout this Court's jurisprudence concerning the issuance of search warrants, it appears we have used the phrases "substantial basis for probable cause" and "sufficient probable cause," somewhat interchangeably. Our standard of review has often been articulated as whether the magistrate had a "substantial basis" to issue the search warrant, while our conclusions therefrom tend to be focused on whether sufficient probable cause existed. *See*, *State v. Siegal* (1997), 281 Mont. 250, 283, 934 P.2d 176, 196 ("[E]xamination of the Application for Search Warrant in the present case leads us to the conclusion that the District Court did not have a substantial basis for finding that the application contained sufficient probable cause to issue a warrant to search Defendants' property."). We take this opportunity to clarify that, pursuant to § 46-5-221, MCA, a reviewing court must ensure that a search warrant application provided sufficient probable cause to support the belief that an offense had been committed and that evidence, contraband, or persons connected with the offense may be found. Thus, the phrase "substantial basis for probable cause" means the same thing as "sufficient probable cause."

¶19　We now consider the search warrant application, without the concededly stale information, to determine if there was sufficient probable cause to support issuance of the search warrant. *See*, *Kuneff*, ¶ 17.

**Issue 2**

¶20    **Did the District Court err when it concluded there was sufficient probable cause to support issuance of the search warrant?**

¶21    In its order denying the motion to suppress, the District Court concluded that given the totality of the circumstances, there was sufficient probable cause to issue the search warrant. The court reasoned the magistrate was presented with the following independent facts that indicated CI had reliable information: (a) officers corroborated CI's statement that St. Marks drove a car with the vanity plate, "SKIDZY;" (b) officers observed St. Marks' vehicle at both the Corner Bar and Townhouse Inn where CI stated St. Marks sold drugs; (c) officers confirmed CI's statement that St. Marks was registered to room 109 at the Townhouse Inn; and (d) Torres' arrest and possession of cocaine corroborated CI's statement that St. Marks and Torres sold cocaine and had cocaine in their possession. The court recognized that the first three facts were not necessarily indications of criminal activity; however, when considered with the information concerning Torres, which was highly indicative of illegal drug activity, the court concluded it became probable CI's information was reliable. The court also noted that officers independently discovered that St. Marks paid for his motel room in cash and that he had a home address in the same town as the motel.

¶22    An application for a search warrant must state facts sufficient to show probable cause for the issuance of the warrant. *See*, § 46-5-221, MCA; and *Grams*, ¶ 14 (citation omitted). When determining whether probable cause existed for issuance of a warrant, we follow the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. *See*, *Grams*, ¶ 14 (citing *State v. Crowder* (1991), 248 Mont.

10

169, 173, 810 P.2d 299, 302). When assessing a search warrant application, "[t]he test is not to determine whether each individual fact presented in the application for search warrant establishes probable cause, but to determine from the totality of the circumstances whether there is probable cause." *Kuneff*, ¶ 27 (citing *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548).

¶23    Thus "to determine whether a court should issue a search warrant, 'the judge evaluates the facts asserted within the four corners of the application and makes a practical, common-sense decision as to whether there is a fair probability that incriminating items will be found in the place to which entry is sought.' " *Grams*, ¶ 14 (quoting *Worrall*, ¶ 28). In looking to the information presented to the issuing magistrate, we will not review a search warrant application sentence by sentence; rather, we must examine the entire affidavit to determine whether the search warrant application stated sufficient probable cause to support the belief that an offense had been committed and that evidence, contraband, or persons connected with the offense may be found. *See,* ¶ 18, herein; and *Gray*, ¶ 11.

¶24    In a series of recent decisions, we have addressed the general principles concerning corroboration of an informant's statements in the context of our review of a search warrant application for sufficiency of probable cause. *See e.g., State v. Reesman*, 2000 MT 243, 301 Mont. 408, 10 P.3d 83; *State v. Griggs*, 2001 MT 211, 306 Mont. 366, 34 P.3d 101; *State v. Gray*, 2001 MT 250, 307 Mont. 124, 38 P.3d 775; and *State v. Grams*, 2002 MT 188, 311 Mont. 102, 53 P.3d 897. In *Reesman* we set out a step-by-step analysis for determining when

further corroboration of an informant's information is necessary to establish sufficient probable cause. *See*, *Reesman*, ¶¶ 28-35.

¶25 Here, St. Marks asserts that CI's statements were based on hearsay, and that therefore, independent corroboration was required. *See*, *Reesman*, ¶¶ 29-30 (independent corroboration of a confidential informant's statements is necessary when the information is founded on hearsay, rather than personal observations). The State asserts that while the search warrant application does not explicitly state the foundations of CI's information, a reviewing court can conclude that CI's statements were based on personal observation given the context and circumstances of the information and the relationship between the informant and the suspect. However, notwithstanding this assertion, the State concedes that independent corroboration of CI's statements was nonetheless required, because the search warrant application failed to establish the existence of any of the three instances under which one can deem a confidential informant's personal observations reliable. *See*, *Reesman*, ¶¶ 32-35 (confidential informant's statements based on personal observations are considered reliable and require no additional corroboration if the informant has previously provided reliable information, the informant's statements are against his own interests, or the informant was motivated by good citizenship).

¶26 Given the State's concession that independent corroboration was required, we will not perform a detailed *Reesman*-analysis in this case, and turn instead to the sufficiency of the independent corroboration of CI's statements.

¶27    St. Marks contends there was insufficient independent corroboration of CI's statements, arguing that the information corroborated by law enforcement was confined to innocent or innocuous details.  He asserts the only criminally suspicious conduct revealed by the investigation was Torres' arrest and possession of cocaine.  St. Marks argues that there was no connection established between him and Torres, and thus there was no basis for using the Torres information against him.  Without this, St. Marks maintains, the search warrant application lacked sufficient probable cause to support the issuance of the search warrant.

¶28    The State contends that the four instances of independent corroboration noted by the District Court were sufficient to establish CI's reliability and ultimately the probable cause necessary for issuing the search warrant.  Specifically, the State argues there was no need to corroborate the working relationship between Torres and St. Marks, asserting that the purpose of corroboration was to determine whether CI's statements were reliable.  Because CI's statements concerning illegal activities were verified when Torres was arrested with a large amount of cocaine in his possession, the State argues, the reliability of CI's information was confirmed.

¶29    We have held that corroboration of an informant's statement by law enforcement "must independently test not only the veracity of the informant's account itself--which may include verification of such innocent details as names and addresses--but also to some measured degree provide the reviewing magistrate with a factual indication that criminal activity has occurred and that contraband may be found in a particular place." *Griggs*, ¶ 28. *See also*, *Hauge v. District Court*, 2001 MT 255, ¶ 24, 307 Mont. 195, ¶ 24, 36 P.3d 947, ¶

13

24. In *Griggs*, an anonymous informant told detectives that Griggs was growing mushrooms in his trailer and distributing them in exchange for marijuana. The anonymous caller supplied some details about the grow operation in Griggs' trailer and also provided "innocuous" details that police corroborated, including a physical description of Griggs, the address and description of Griggs' trailer, and the fact that Griggs had served in the Army, as a sharpshooter, and drove a black Ford Ranger pickup truck. *See*, *Griggs*, ¶¶ 6 and 7.

¶30 After concluding that "when required, the subsequent corroboration of an informant's tip must reveal indicia of human conduct that becomes suspicious when viewed in conjunction with the incriminating information received from the informant concerning a suspect's particular criminal activity," we concluded that corroboration of such innocuous details failed to supply any indicia of human conduct even remotely associated with the criminal activity alleged by the informant and affirmed the district court's order granting Griggs' motion to suppress. *Griggs*, ¶¶ 50-51.

¶31 Shortly after *Griggs*, we again addressed the adequacy of independent corroboration in *State v. Gray*. In *Gray*, a confidential informant told police that her companion, Wallace, had recently constructed a secret room, designed to facilitate a marijuana growing operation, in the upper portion of Gray's residence. The informant also stated she had seen marijuana buds purportedly grown by Gray; however, the informant admitted she did not have personal knowledge of either the room or the origin of the marijuana buds. Detectives surveyed Gray's home and confirmed the informant's description of the property and that Gray owned the residence. *Gray* ¶¶ 4 and 5.

¶32    Applying our holding from *Griggs*, we determined that verification of the physical description of the house and Gray's ownership of the residence provided the same innocuous information contemplated in *Griggs*, and concluded that corroboration of those innocent facts failed to provide the necessary indicia of suspicious human conduct to substantiate the informant's assertions. *Gray*, ¶ 20. However, we then looked to further corroboration efforts undertaken by law enforcement, noting that the search warrant application also stated that Wallace had a criminal history involving dangerous drugs, Gray's brother, a "known drug user," was observed frequenting Gray's residence, the utility records for Gray's house indicated an unusual increase in electrical power usage, and based on the officer's training and experience, the air vents and chimney on Gray's house that were recently installed were consistent with ventilation requirements of grow operations. *Gray*, ¶ 21. We concluded that the informant's hearsay statements were sufficiently corroborated by independent police investigation, which revealed the necessary indicia of suspicion when considered in conjunction with the informant's statements concerning illegal activity. *Gray*, ¶ 33.

¶33    In this case, officers also verified seemingly innocent details, such as St. Marks' license plate, where he parked his car in public places downtown, and that he was staying in a particular room in a local motel. As we did in *Griggs* and *Gray*, we conclude that corroboration of these innocent facts alone failed to provide the necessary indicia of suspicious human conduct to substantiate CI's statements. However, as we did in *Gray*, we will also assess the additional corroboration and investigation by law enforcement.

15

¶34 First, upon further investigation, officers discovered that St. Marks had been staying at the motel for over two months, paid his bill every two weeks in cash, and had a home address in the same town as the motel. Van Vleet's affidavit explained that it is unusual for people to stay in a motel for long periods of time when they have a local address, that distributors of dangerous drugs often maintain significant amounts of cash on hand, and that it is also common for drug dealers to stay in places other than their home to avoid bringing attention to themselves or placing their own residence at risk.

¶35 We have recognized that "[a]t some point we must lend credence to the judgment of law enforcement officers whose training and experience invoke common-sense conclusions about human behavior." *Gray*, ¶ 32.

> The probable cause process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Gray*, ¶ 32 (citing *Illinois v. Gates*, 462 U.S. at 231-32, 103 S.Ct. at 2328-29, 76 L.Ed.2d at 544).

¶36 We conclude we should lend credence to Van Vleet's judgment. His experience and training provided a reasonable basis for his conclusions concerning St. Marks' behavior. Thus, the independent corroboration of St. Marks' motel room number, together with his method of payment and the fact that he had a local address, added to the suspicious character of St. Marks' activity, particularly when taken as a whole with the information from

16

the search warrant application concerning the three anonymous phone calls and, notably, Torres' arrest and possession of large amounts of cocaine.

¶37    The search warrant application provided that Torres had been arrested by federal authorities with eleven baggies of cocaine on his person, just one day after CI told Van Vleet that Torres and St. Marks had recently received a shipment of more than two pounds of cocaine. Torres' arrest and possession of large amounts of cocaine--the very drug identified by CI--was not corroboration of an innocuous fact such as a licence plate or where a person parks his car. Rather, it corroborated CI's statements by verifying Torres' possession of cocaine and provided an indicia of reliability concerning her statements about the alleged criminal activity of St. Marks.

¶38    We reject St. Marks' contention that the absence of any demonstrable connection between Torres and himself makes corroboration of Torres' conduct irrelevant to establishing probable cause for searching St. Marks' property. In *Gray*, the connection between Wallace and Gray was based only upon statements made by the confidential informant, yet Wallace's history was still considered in the totality of the circumstances as corroboration of suspicious conduct on the part of Gray.

¶39    We have repeatedly stated that "probable cause exists only when a search warrant affidavit sets forth sufficient facts that would lead a prudent person to believe there is a fair probability--rather than a prima facie case--that contraband or evidence of a crime will be found in a particular place." *Griggs*, ¶ 27 (citing *Reesman*, ¶ 24; *State v. Deskins* (1990), 245 Mont. 158, 162, 799 P.2d 1070, 1072-73; and *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct at

17

2332, 76 L.Ed.2d at 548). Moreover, even if a confidential informant's statements require independent corroboration, the informant's information may be considered with other factors in determining probable cause under the totality of the circumstances test. *Gray*, ¶ 17 (citing *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223). Finally, as we have stated, the "critical" aspect of corroboration is determining when " 'innocent' non-criminal activity or evidence subjected to further corroboration by officers ripens into suspicious behavior in light of the informant's 'tip' concerning criminal activity." *Griggs*, ¶ 44 (citations omitted).

¶40    Unlike *Griggs*, where corroboration of only innocuous details failed to indicate any conduct remotely associated with criminal activity, law enforcement officers in this case sufficiently corroborated both non-criminal and criminal facets of CI's statements that established "a pattern of human behavior associated with the alleged criminal activity . . . [that] when viewed as a whole, [was] consistent with the alleged criminal activity" thus revealing the required indicia of suspicion. *Griggs*, ¶ 46. The efforts law enforcement made to corroborate CI's statements independently tested not only the veracity of her statements, including verification of innocuous details, but also provided sufficient factual indications that criminal activity had occurred and that contraband may be found in a particular place.

¶41    We also take into account the three anonymous phone calls under our *de novo* review of the search warrant application. While we agree with the District Court that the anonymous tips, by themselves, are not adequate to support probable cause without further investigation to verify or corroborate the information contained in the tips, they still have some probative value in determining probable cause. *See*, *Rinehart*, 262 Mont. at 211, 864 P.2d at 1223

18

(citation omitted) ("Factors which have little probative value on their own can still provide a basis for a determination of substantial evidence to conclude probable cause existed to issue a search warrant when such factors are considered in combination with other information under the totality of the circumstances test.").

¶42 Therefore, after evaluating the totality of the circumstances within the four corners of the search warrant application, excluding the information conceded as stale, we conclude that the unredacted information supplied in the application, including the subsequent corroboration and investigation by law enforcement, provided sufficient probable cause to support the belief that an offense had been committed and that evidence, contraband, or persons connected with the offense may be found.

¶43 Accordingly, we affirm the District Court's order denying St. Marks' motion to suppress.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE

19