No. 05-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 148

_____

STATE OF MONTANA,

           Petitioner and Respondent,

   v.

$129,970.00, ONE HUNDRED TWENTY NINE
THOUSAND NINE HUNDRED SEVENTY
DOLLARS IN UNITED STATES CURRENCY,
DANIEL WARD PAYNE,

           Respondent and Appellant.

_____

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and for the County of Rosebud, Cause No. DV 03-020,
                    The Honorable Joe L. Hegel, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

                Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

        For Respondent:

                Michael B. Hayworth, Rosebud County Attorney, Forsyth, Montana

_____

Submitted on Briefs:  July 6, 2006

Decided:  June 19, 2007

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Daniel Ward Payne (Payne) appeals from an Order of the Sixteenth Judicial District Court, Rosebud County, granting the State's petition for forfeiture of $129,970.00 in U.S. currency.  We affirm.

¶2     We restate and address the following issues on appeal:

¶3     1. Did the removal of Payne's personal possessions from the car rented by Payne constitute a warrantless search that violated his right to privacy?

¶4     2. Was the detention of Payne a pretext to allow law enforcement to retain his personal property for a sufficient time to obtain a search warrant, thereby making the search and seizure of that property unlawful?

¶5     3. Was the warrant to search the rental car defective because it was overbroad, failed to reference a specific offense and was not supported by probable cause?

¶6     4. Did the State present sufficient evidence to justify the forfeiture of the $129,970.00?

BACKGROUND

¶7     On the evening of Saturday, March 22, 2003, Montana Highway Patrol Officer Lytle stopped a car traveling 98 miles per hour in a 75 mile-per-hour zone.  During the stop, Lytle observed behavior that lead to the arrest of Payne, the driver, for driving under the influence of alcohol (DUI).  Payne was also cited for speeding and failure to wear a seatbelt.

¶8     In the course of the traffic stop, Officer Lytle obtained the car's registration and a copy of a rental contract.  The documents stated that Avis Rental Company (Avis) owned

2

the car. The rental contract stated that Payne rented the car in Pennsylvania on Friday, March 21. Payne was to return it to an Avis location in Seattle, Washington, by Monday, March 24.

¶9 Lytle is a fourteen-year veteran of the highway patrol with both departmental and out-of-state specialized training in the identification of contraband trafficking and transportation. Lytle, utilizing his training, asked Payne if he was carrying guns, drugs, or large amounts of currency. Payne denied he was carrying any of these. Lytle transported Payne to the Rosebud County Sheriff's Office in Forsyth (Sheriff's Office) and also had the rental car towed to the Sheriff's Office.

¶10 During the arrest and en route to the Sheriff's Office Payne told Lytle he was driving from Pittsburgh to Seattle to visit his adult children. Payne stated that he planned on returning to Pennsylvania on a flight leaving Seattle on Monday, March 24. Lytle became suspicious because Payne said he was driving several thousand miles to visit relatives for only a few hours and then take a flight back home.

¶11 Lytle contacted Avis and informed them of Payne's arrest for DUI. Lytle testified that it is his practice to contact the vehicle owner (individual or corporation) when a non-owner driver is cited for a serious driving violation. Avis told Lytle that it exercised its authority under the rental contract to immediately terminate the contract, and to repossess the vehicle. Avis instructed Lytle to remove Payne's possessions from the vehicle and hold the car so that Avis could come and get it.

¶12 Lytle requested that Payne consent to a search of the car and its contents for evidence regarding intoxication. At first, Payne refused. Then, Lytle explained that Avis

3

had asked him to remove his property from its vehicle and that he would apply for a search warrant for Payne's property. Payne then agreed to consent to a search of the car. Nevertheless, Lytle decided to apply for a search warrant covering Payne's property found in the car.

¶13 Acting on the instructions of Avis, Lytle removed Payne's property from the rental car. While doing so, Lytle found a marijuana butt (roach) on the passenger side floor and a marijuana bud on the driver's side seat in plain view. Lytle also removed drug paraphernalia from the armrest console of the car, as well as two backpacks and a padlocked plastic toolbox from the trunk. An Avis representative came to the Sheriff's Office and took the car right away on Sunday morning, March 23.

¶14 Based on his training and experience, Lytle knew that Seattle serves as a drug trafficking point, with money traveling west and drugs traveling east. Lytle suspected Payne was a drug courier because of this knowledge, the questionable purpose for the short stay in Seattle, and the small amount of luggage in the car. After Avis picked up its car on Sunday morning, March 23, Lytle reported his observations to the Eastern Montana Drug Task Force (Task Force).

¶15 Based on Lytle's training and observations, including the stated purpose of the trip, the marijuana in plain view, and drug paraphernalia, Task Force Agent David Stirling applied for and obtained a warrant to search the items removed from the rental car on Monday morning, March 24. The warrant was issued. The resulting search of the toolbox uncovered a marijuana cigarette and two packages of cash, each package triple-vacuum-sealed in plastic. Both Lytle and Stirling recognized this as a typical way drug

4

traffickers package cash that had been exposed to illegal drugs in order to prevent detection by drug-sniffing dogs. The cash totaled $129,970.00.

¶16 Payne was booked into the Rosebud County detention facility on Saturday, March 22, on the DUI charge. Lytle testified that he several times explained to Payne that he could post bail. Lytle told Payne that the amount of bail would be $385.00, he would have to appear before a judge, and if Payne did not make bail his court appearance would be Monday morning. Payne had enough money to post bail that night, but did not do so.

¶17 Payne testified that after talking with Lytle he was under the impression that he could not post bail until he had spent at least 24 hours in jail. Payne based his impression, in part, on his understanding of Washington law. Payne also testified that he could not remember much about the night of the arrest, and could not remember ever asking to post bail.

¶18 Both the detention officer and the detention supervisor who were working when Payne was booked into the jail testified that they at no time received instructions to deny Payne the right to post bail. Payne did post bail on Monday, March 24, after the search warrant was issued, and he was released. The State seized the $129,970.00 on execution of the search warrant.

¶19 The State timely filed a petition for forfeiture against the $129,970.00. Several months after filing his answer and counterclaim, Payne moved to dismiss the petition, arguing that the search and seizure of his property was unlawful. The District Court did not enter a separate order on the motion to dismiss. A trial was subsequently held on the petition for forfeiture. The Order of the District Court granting the petition also

addressed the issues Payne had raised in his motion to dismiss.

¶20 At the trial, Payne testified that he had brought $3,000 to $4,000 into an illegal, high-stakes poker game against some "gangster types" in Pittsburgh, Pennsylvania, and that he won $130,000. Payne further explained that the money was delivered to him the next day in the toolbox. On the advice from the person or persons who delivered the money, Payne did not open the toolbox to look at the money because it was "ill-gotten gains."[1] Payne also claimed he was taking the money to Seattle to somehow avoid tax consequences. In its Order dated August 6, 2005, the District Court found Payne's testimony about how he won the money in a poker game "completely unbelievable, i.e., it is not credible." The District Court also found that Payne's confusion regarding his ability to bond out was "most likely due to his marijuana and alcohol induced state of intoxication."

¶21 The District Court granted the State's petition for forfeiture. This appeal followed.

STANDARD OF REVIEW

¶22 We review a district court's grant of a forfeiture petition to determine if its findings of fact are clearly erroneous and its conclusions of law correctly interpret the law. *Seizure of $23,691.00 in U.S. Currency*, 273 Mont. 474, 483, 905 P.2d 148, 154 (1995).

¶23 In reviewing a search warrant for probable cause, we ensure that the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Hauge v. Dist. Ct.*, 2001 MT 255, ¶ 21, 307 Mont. 195, ¶ 21, 36 P.3d 947, ¶ 21. We pay

---

[1] The record does not reveal what happened to the $30.00 difference between the $130,000.00 Payne said he won and the $129,970.00 seized.

6

great deference to a court's determination that probable cause existed, and draw every reasonable inference possible to support that determination. *State v. Minez*, 2004 MT 115, ¶ 16, 321 Mont. 148, ¶ 16, 89 P.3d 966, ¶ 16. We review *de novo* a district court's legal conclusion on whether or not a search warrant is overbroad. *Hauge*, ¶ 11.

DISCUSSION

ISSUE ONE

¶24 Did the removal of Payne's personal possessions from the car rented by Payne constitute a warrantless search that violated his right to privacy?

¶25 Payne argues that Lytle's removal of his personal property from the rental car violated his right to privacy. According to Payne, this removal of his property constituted a warrantless search and none of the judicially recognized exceptions to the requirement of a search warrant apply. Payne also argues that, since he was in lawful possession of the rental car, Avis could not consent to the removal of his personal property.

¶26 Both the Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures. *State v. Copelton*, 2006 MT 182, ¶ 10, 333 Mont. 91, ¶ 10, 140 P.3d 1074, ¶ 10 (citing *State v. Snell*, 2004 MT 269, ¶ 9, 323 Mont. 157, ¶ 9, 99 P.3d 191, ¶ 9). The right to privacy in Article II, Section 10 of the Montana Constitution augments the protection against unreasonable searches and seizures. *State v. Hill*, 2004 MT 184, ¶ 19, 322 Mont. 165, ¶ 19, 94 P.3d 752, ¶ 19. Sections 10 and 11 of Article II of the Montana Constitution are read together when analyzing search and seizure questions that specifically implicate the right to privacy. *Hill*, ¶ 19 (quoting *State v. Boyer*, 2002 MT

7

33, ¶ 19, 308 Mont. 276, ¶ 19, 42 P.3d 771, ¶ 19). In determining whether the government unlawfully intruded into an individual's privacy in search and seizure situations, we consider the following factors:

> (1) whether the person has an actual expectation of privacy; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the State's intrusion.

*Hill*, ¶ 24. Where no reasonable expectation of privacy exists, there is neither a "search" nor a "seizure" within the contemplation of Article II, Section 10 of the Montana Constitution. *Hill*, ¶ 24.

¶27 In *Hill*, we held that a rental company could give permission to search the trunk of the rental car when the operator was not an authorized driver of the car. *Hill*, ¶ 35. We stated that unauthorized drivers lack the right to exclude others from the trunk of a car, thereby suggesting a lack of subjective expectation of privacy. We concluded that even if a subjective expectation of privacy could be shown, that expectation was not objectively reasonable. *Hill*, ¶ 25.

¶28 In the present case, when Lytle removed Payne's property from the rental car, Payne was no longer a lessee of the car. Upon Payne's arrest for DUI, the car's owner, Avis, had the right to terminate the rental contract and end Payne's possessory interest in the vehicle. The rental contract, at ¶¶ 16 and 21, provides in pertinent part:

> I will not use . . . the car . . . while under the influence of alcohol . . . . A violation of this paragraph automatically terminates my rental and makes me liable to you [Avis] for all penalties, fines.
>
> . . . .
>
> You [Avis] can repossess the car anytime it is . . . being used to violate the law or the terms of this agreement . . . . You needn't notify me in advance.

8

Once Avis exercised its right to terminate the contract immediately and without notice, and to repossess the rental car, Avis regained control of the car. As Payne was no longer in lawful possession of the rental car, he had no right to prevent Avis from consenting to the removal of his personal property. *See Hill*, ¶ 35. While Payne's initial status as the driver of a properly rented car might have given him a subjective expectation of privacy, his illegal behavior along with Avis's termination of the contract rendered his expectation of privacy in the contents of the car unreasonable.

¶29 Avis, after the termination of the rental agreement, had the ability to consent to the removal of Payne's property from the car. Avis's knowing and voluntary request that Lytle remove Payne's personal property from the car is a recognized exception to the warrant requirement. *Hill*, ¶¶ 34-35; § 46-5-101, MCA.

¶30 In carrying out this request, Lytle saw the marijuana in plain view and seized it. No constitutional protections extend to items stored in non-concealed areas of a vehicle. *State v. Griffin*, 2004 MT 331, ¶ 25, 324 Mont. 143, ¶ 25, 102 P.3d 1206, ¶ 25. Likewise, the removal of drug paraphernalia from Avis's car did not violate Payne's privacy. *Hill*, ¶ 25.

## ISSUE TWO

¶31 Was the detention of Payne a pretext to allow law enforcement to retain his personal property for a sufficient time to obtain a search warrant, thereby making the search and seizure of that property unlawful?

¶32 Payne argues that keeping him in jail while his property was removed from the rental car was merely a pretext to prevent him from re-taking his property before issuance

9

of a search warrant. Payne contends that Lytle carried out this pretext by contacting Avis and by misrepresenting his right to post bail.

¶33 When Lytle called Avis he suspected Payne was engaged in drug courier activity. Lytle testified at the trial that it is standard procedure to advise a rental company of the situation presented by these facts, so that the company knows where its vehicle is, and to give the company an opportunity to re-take possession of its property under the terms of the rental contract. Pursuant to the express terms of its contract, Avis had the right to immediately re-take possession of the car without notifying Payne. Therefore, Avis had the legal right to ask Lytle to remove Payne's property.

¶34 Lytle testified that when he contacted Avis he hoped to get its consent to search it. However, "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996); *followed in State v. Bar-Jonah*, 2004 MT 344, ¶ 73, 324 Mont. 278, ¶ 73, 102 P.3d 1229, ¶ 73 ("As probable cause existed for issuance of the search warrant, the officer's subjective intent in securing the warrant was irrelevant."). This Court has never held that an otherwise objectively justifiable traffic stop is unlawful because an officer used the stop to investigate a hunch about other criminal acts. *Bar-Jonah*, ¶ 73 (citing *State v. Farabee,* 2000 MT 265, ¶ 29, 302 Mont. 29, ¶ 29, 22 P.3d 175, ¶ 29). Here, Payne does not argue that there was no particularized suspicion to stop him. Nor does he challenge his arrest for speeding, DUI and failure to wear a seat belt. Once Payne was properly stopped and arrested, Lytle's contact with Avis did not constitute an illegal pretext for securing its permission to remove Payne's property from Avis's car.

¶35 Payne argued to the District Court, and now argues on appeal, that Lytle misrepresented Payne's right to post bail so that Lytle could keep him in jail, and this misrepresentation was a pretext to allow Lytle time to secure a search warrant. However, the District Court found as a matter of fact:

> Mr. Payne admits that he was under the influence of alcohol and marijuana when arrested and he admits that he is not clear about a lot of things that may have been said or done on the evening of his arrest. Mr. Payne never states unequivocally that Officer Lytle or anyone else told him he could not post his own bail; he just states that he was under that impression based in part of his understanding of the law in the State of Washington. The jail personnel also indicate that Mr. Payne never even asked them to bail out until his girlfriend got there on Monday. While Mr. Payne may have been operating under a misapprehension as to whether he could post his own bail, there is no evidence that this resulted from being misinformed by law enforcement. Therefore, this argument also fails.

¶36 The standard of review of a district court's findings of fact is whether such findings are clearly erroneous. *Seizure of $23,691.00*, 273 Mont. at 483, 905 P.2d at 154. The findings of a district court sitting without a jury are clearly erroneous if they are not supported by substantial credible evidence, if the district court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. *Sunday v. Harboway*, 2006 MT 95, ¶ 17, 332 Mont. 104, ¶ 17, 136 P.3d 965, ¶ 17. None of the three factors used to determine that a district court's findings of fact are clearly erroneous apply in this instance. We therefore will not disturb the District Court's conclusion that neither Lytle, nor anyone else connected with the State, misrepresented Payne's right to post bail as a pretext to gain more time.

11

¶37 Was the warrant to search the rental car defective because it was overbroad, failed to set forth a specific offense and was not supported by probable cause?

¶38 Payne argues that the search warrant used to open the toolbox and discover the $129,970.00 is overbroad because it allows for the seizure of an overly expansive list of items with no restrictions. Payne also argues that the warrant failed to specify the exact criminal activity that was taking place because it referenced only a "violation of Title 45-9, Montana Code Annotated." Payne finally argues that the application lacked sufficient facts to provide probable cause for issuing the warrant.

¶39 The Fourth Amendment to the United States Constitution requires, in part, that a search warrant particularly describe the items for which it authorizes seizure. *State v. Pierce*, 2005 MT 182, ¶ 26, 328 Mont. 33, ¶ 26, 116 P.3d 817, ¶ 26; § 46-5-221, MCA. Article II, Section 11 of the Montana Constitution does not include the word "particularly." However, this Court has held that the Montana Constitution does impose a particularity requirement identical to that under the United States Constitution. In addition, § 46-5-221(4), MCA, requires that a judge issue a search warrant that "particularly describes who or what is to be seized." *Hauge*, ¶ 13; *See also State v. Seader*, 1999 MT 290, ¶¶ 7, 11, 14, 297 Mont. 60, ¶¶ 7, 11, 14, 990 P.2d 180, ¶¶ 7, 11, 14.

¶40 The warrant in this instance described a number of items, and explained the connection of all such items to illegal drug activities. Relating to the $129,970.00 at issue in this case, the warrant described:

12

> Proceeds of dangerous drug sales to include United States currency . . . or intended to be furnished in the exchange of controlled substances in violation of Title 45, Chapter 9, MCA.

This description of "United States currency" gave the executing officers precise guidance in determining what could be seized and therefore was not overbroad. *Seader*, ¶¶ 14-15. Also, a description of money as United States currency is not overbroad. A more precise description of this item sought for seizure is not possible. *See Seader*, ¶ 13. In this instance, the warrant's description of the $129,970.00 that was seized was not overbroad.

¶41 The warrant also references items connected with illegal drug activity in violation of Title 45, Chapter 9 of the Montana Code Annotated. This chapter of the laws of Montana includes offenses based, in part, on the type and amount of illegal drugs. As explained by the District Court: "It would be unreasonable to require officers in such situations to intuit the particular type or amount of drug that would be found, so as to identify the particular sections of Title 45, Chapter 9 that might apply." We conclude under the present circumstances the reference to the statutes suspected of being violated is sufficiently specific.

¶42 A search warrant application must state facts sufficient to show probable cause for the issuance of the warrant. *State v. St. Marks*, 2002 MT 285, ¶ 22, 312 Mont. 468, ¶ 22, 59 P.3d 1113, ¶ 22; § 46-5-221, MCA. In making this determination, we follow the "totality of the circumstances" test from *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *St. Marks*, ¶ 22. The facts asserted within the four corners of the application must form the basis of this determination, and we must examine the entire affidavit to determine whether the application stated sufficient probable cause. *St. Marks*, ¶ 23.

¶43 The first part of the affidavit in support of the application for a search warrant listed the applicant's training and experience. The second part described information specific to Payne and the circumstances surrounding his stop and arrest, Avis authorizing the removal of Payne's personal property from the rental car, the discovery of the marijuana and the drug paraphernalia, and the other personal property removed from the car. The description of the personal property removed from the car included the plastic toolbox which was locked. It also described Payne's stated itinerary as follows:

> During the investigation and arrest process, Officer Lytle discovered that Payne was traveling from Pennsylvania to Seattle, WA. The rental agreement indicated the car was to be left in Seattle. Payne stated to Officer Lytle that he was traveling to Seattle to visit his children—ages 20 and 21. He also advised he was to return to Pennsylvania on a flight leaving Seattle on Monday, March 24, 2003. Officer Lytle felt that it was quite unusual for a person to travel via car from Pennsylvania to Seattle and visit relatives for only a matter of hours and then take a commercial flight back home.

The affidavit concludes as follows:

> Agent Stirling learned of the circumstances regarding Payne. Agent Stirling knows through his training and experience that drug traffickers generally travel with little or no luggage. Agent Stirling knows that Drug Traffickers generally take unusual means to protect their assets and investments. Drug traffickers will take protective measures to keep these items concealed from law enforcement by concealing them in locked containers and in other items of personal property.

¶44 This Court has recognized that at some point we must lend credence to the judgment of law enforcement officers whose training and experience invoke common-sense conclusions about human behavior. *St. Marks*, ¶ 35 (quoting *State v. Gray*, 2001 MT 250, ¶ 32, 307 Mont. 124, ¶ 32, 38 P.3d 775, ¶ 32). Given the information contained in the affidavit in support of the application for a search warrant, including the discovery

of marijuana and drug paraphernalia in the car, and the training and experience of the law enforcement officers as applied to the facts presented in this particular situation, there was sufficient information presented to the issuing magistrate to establish probable cause to issue the warrant. As the application for the search warrant was supported by probable cause, and the warrant was sufficient, no unlawful seizure occurred.

## ISSUE FOUR

¶45 Did the State present sufficient evidence to justify the forfeiture of the $129,970.00?

¶46 Payne argues that the State failed to rebut his claim that he won the $129,970.00 in an illegal poker game. Payne argues that his explanation of the source of the currency is plausible, and the State failed to rebut this explanation with other evidence.

¶47 The State petitioned for forfeiture of the $129,970.00 under § 44-12-102, MCA. There is a rebuttable presumption of forfeiture of such property. Section 44-12-203, MCA. To rebut this presumption, Payne must prove that the property was not used for the purpose charged, or its use for such purpose occurred without his knowledge or consent. Section 44-12-204(1), (2), MCA. The presumption remains until rebutted by a preponderance of contrary evidence. *Seizure of $23,691.00*, 273 Mont. at 484, 905 P.2d at 154.

¶48 A district court does not err in concluding that a person has failed to rebut the presumption of forfeiture when his testimony is questionable and the State produces strong circumstantial evidence connecting the property to illegal drug activity. *Seizure of $23,691.00*, 273 Mont. at 484-85, 905 P.2d at 154-55. In this instance, the District Court

found Payne's testimony regarding how he obtained the $129,970.00 in question to be "completely unbelievable" and "not credible." After an examination of the record, we agree with the District Court.

¶49 The State also presented circumstantial evidence connecting the $129,970.00 to illegal drug activity. This evidence included the marijuana and the drug paraphernalia discovered in the rental car, the triple wrapped currency which is consistent with a purpose to hide the odor of illegal drugs from a canine search, the suspicious nature of Payne's stated itinerary, and Payne's incredible story about how he got the money. The District Court did not abuse its discretion in finding that Payne presented insufficient evidence to rebut the presumption of forfeiture which attaches pursuant to § 44-12-203, MCA.

¶50 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER